**IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON**

| WILLIE PERRY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff/Appellant, | ) | **Lauderdale Circuit No. 5033** |
| | ) | |
| VS. | ) | **Appeal No. 02A01-9812-CV-00369** |
| | ) | |
| ROBERT CONLEY, et al, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

**FILED**

**May 5, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF LAUDERDALE COUNTY
AT RIPLEY, TENNESSEE
THE HONORABLE JOSEPH H. WALKER, JUDGE

**WILLIE PERRY, pro se**
Henning, Tennessee


**PAUL G. SUMMERS**
**Attorney General and Reporter**
**MICHAEL E. MOORE**
**Solicitor General**
**SOHNIA W. HONG**
**Assistant Attorney General**
Nashville, Tennessee
Attorneys for Appellees

**AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Willie Perry ("Perry" or "Appellant") appeals the judgment of the trial court granting

summary judgment to Appellees Robert Conley, et al. ("Appellees").

## I. Factual and Procedural History

Perry is an inmate lawfully in the custody of the Tennessee Department of Correction (TDOC). At the time of the events giving rise to this lawsuit, Perry was incarcerated at West Tennessee High Security Facility (WTHSF) in Henning, Tennessee. This case involves Perry's allegations that certain WTHSF employees, namely Robert Conley, Tony Parker, Bernard Bennett, Charles Piphus, Robert Henry, Scott Wilson, Vickie Kirby and Kenneth Boyd, unlawfully converted, detained, and damaged Perry's 13 inch color television set.

Perry was issued two disciplinary infractions in August of 1997. Perry was moved to Unit 2 on segregation pending the disciplinary hearing. A WTHSF disciplinary board conducted a hearing and found Perry guilty as charged on August 19, 1997. Perry's punishment was thirty days punitive segregation for each charge. Perry was also placed on administrative segregation due to his disciplinary findings. Perry's segregation was to end on October 18, 1997.

Since inmates are not permitted to have televisions while they are in segregation, Inmate Relations Coordinator, Kenneth Boyd ("Boyd"), took away Perry's television from him and placed it in the storage room for Unit 2. Perry was not given a Personal Property Storage Form. On August 25, 1997, Perry was moved to Unit 6 to serve the remainder of his segregation time. Perry alleges that Boyd refused to send his television to Unit 6 with Perry to be stored in Unit 6's storage room. Perry claims that at this time Boyd told Perry he could forget about getting his television back.

Perry was taken off punitive segregation in mid-October and he requested the return of his television set. Correction Corporal, Vickie Kirby ("Kirby"), searched the Unit 2 storage room and was not able to locate the television. Perry submitted several requests by inmate

request form to the unit management team and a letter to the warden concerning the whereabouts of his television set and the reprisal Perry was receiving as a result of a lawsuit he had previously filed. All requests by Perry went unanswered.

Perry asserts that on October 25, 1997, Inmate Relations Coordinator, Scott Wilson and Correctional Counsel, Bernard Bennett, came to his cell door and told Perry to stop turning in inmate Information Requests to the Unit Team asking the whereabouts of his television, because the television was not going to be returned since it now belonged to WTHSF employees. Perry also asserts that Boyd informed him that his television would not be given back to him because he did not need it and for Perry to "buy another television because WTHSF has it now." On November 20, 1997, Perry filed suit for the return of his television set and/or damages for the wrongful conversion and detention of his television set.

While Perry was in segregation, his television set was somehow acquired by another inmate, Harvey Alexander. On October 6, 1997, WTHSF officials confiscated a television from inmate Alexander who was subsequently transferred to Brushy Mountain State Penitentiary in Petros, Tennessee. The identification marks on the television had been altered and Kirby could not identify the owner of the television at that time. When Perry requested the return of his television in mid-October, 1997, Kirby searched the Unit 2 storage room and could not locate the television.

At some later date, Kirby was informed by an Inmate Relations Coordinator that inmate Alexander may have possessed Perry's television. Kirby called Brushy Mountain State Penitentiary (BMSP) and investigated as to whether Alexander had taken the television to that institution. Kirby learned that Alexander did not have the television at BMSP.

On December 4, 1997, after Perry initiated this action in Circuit Court, Kirby searched the property room and looked through a shelf with televisions that were to be

sent to charity. On the bottom of one television set, Kirby made out Perry's initials and TDOC number. The television was the one confiscated from inmate Alexander before he was transferred to BMSP. The television was returned to Perry that same day.

Upon receiving the television on December 4, 1997, Perry inspected it and found that it had been cracked in several places, the speaker on the television was broken and Perry's TDOC number had been taken off of it. Perry asserts that the television was in good condition with nothing broken or scratched when it was confiscated by Boyd at the beginning of his segregation time. Perry immediately filed an emergency request form to have a prison employee take back the television because of the damage done to it. The television was picked up that day. Perry sent a request to Kirby explaining that he wanted her to hold the television until it was formally acknowledged that the damage was done to the television while out of Perry's control.

On December 4, 1997, Perry filed a grievance concerning the damage done to the television while in the safekeeping of the prison. On December 18, 1997, Perry sent a request form to Kirby informing her that his grievance had been resolved and requesting the return of his television. Perry received no response. On December 22, 1997, Perry sent a request to the Warden who forwarded it to Kirby. Kirby stated that the television was placed with her by Perry and it was being held in the property room until the lawsuit is settled. Perry alleges that he was told by Kirby, Boyd, Warden Robert Conley, and Unit Manager Robert Henry that if he would drop the lawsuit, he would get his television back but if the lawsuit was not dropped, he would never see his television again.

Perry contends that he was told by Kirby that Boyd was the person who scratched Perry's name and TDOC number off of Perry's television set and that Boyd was the person who cracked the television and gave it away to another inmate for his own personal use. Perry contends that on December 22, 1997, Boyd informed him that the property room personnel damaged the television and took Perry's TDOC number off of it and that Perry would not receive his television back because he filed this lawsuit.

4

On January 26, 1998, Perry filed an amended complaint for the damage done to his television while in the prison's safekeeping, and advanced claims of retaliation and extortion by prison officials. On February 9, 1998, Perry's television set was returned to him.

On April 29, 1998, Appellees moved for summary judgment together with affidavits and a statement of material and undisputed facts. The trial court adopted the statement of material and undisputed facts and the legal analysis set forth in the memorandum in support of the motion for summary judgment and granted summary judgment to Appellees on September 21, 1998. This appeal by Perry followed.

**II. Standard of Review**

According to Rule 56.03, summary judgment is to be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. Graves v. Anchor Wire Corp. of Tennessee, 692 S.W.2d 420 (Tenn.App. 1985); Bennett v. Mid-South Terminals Corp., 660 S.W.2d 799 (Tenn.App. 1983).

When the party seeking summary judgment makes a properly supported motion, the burden then shifts to the nonmoving party to set forth specific facts, not legal conclusions, by using affidavits or the discovery materials listed in Rule 56.03, establishing that there

5

are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact and that a trial is therefore necessary. Byrd v. Hall, 847 S.W.2d 208, 215 (Tenn. 1993).

In appeals from grants of summary judgment, the Court of Appeals must decide whether the court below correctly applied Rule 56.03 and in so doing, the Court must make an entirely fresh determination because only questions of law are presented; no presumption of correctness accompanies the trial court's decision. Hill v. Chattanooga, 533 S.W.2d 311(Tenn.App. 1975).

### III. Propriety of Summary Judgment

Perry seeks damages for the injuries to his personal property and for the conversion and/or wrongful detention of his property.[1] In Appellees' memorandum in support of summary judgment, Appellees argue that 1) Perry failed to state a claim for Eighth Amendment violations; 2) Perry failed to state a claim for extortion, conversion, or retaliation; and 3) Defendants are absolutely immune from liability for acts or omissions within the scope of their office or employment. The trial court adopted the Appellees' reasoning in its order granting summary judgment.

We agree with the trial court that summary judgment was proper as to any Eighth Amendment claims advanced by Perry, although it is not clear from Perry's complaint that such constitutional claims were advanced. We would also agree that summary judgment was proper to the extent that Perry sought to recover for his "extortion" and "retaliation" claims. We know of no statutory or common law authority --except in states where statutes provide for civil penalties for the crime of extortion-- which would allow Perry to recover damages for "extortion" or "retaliation" under these facts.

---

[1]In Perry's Amended Complaint, Perry attempts to bring this action on his own behalf and on behalf of "other similarly situated." In Appellees' memorandum in support of summary judgment, Appellees argue that Perry lacked standing to sue on behalf of other inmates similarly situated. The trial court adopted the reasoning found in Appellees' memorandum in granting summary judgment. While Perry does not appear to appeal this ruling of the trial court, for clarification of issues on remand, we hold that to the trial court did not err in granting Appellees' motion for summary judgment on the issue of standing to assert third party interests.

Construing Perry's *pro se* complaint broadly, Perry alleges a claim for the conversion and/or wrongful detention of his property and for the injuries to his property. These claims are recognizable under Tennessee law. *See* Tenn. Code Ann. §28-3-105 (Actions for injuries to personal or real property shall be commenced within three (3) years from the accruing of the cause of action); *See also* Beaty v. McGraw 1998 WL 855516, *7 (Tenn.App. 1998) (damages for the wrongful detention of property may be measured either by the fair market rental value of the property for the period of detention, or by the net profit lost during the detention period).

Appellees argue that Perry failed to state a claim for conversion as the television was not appropriated for Appellees' own use and benefit. However, a conversion, in the sense of the law of trover, consists either in the appropriation of the property of another, or in its destruction, or in exercising dominion over it in defiance of the owner's right, or in withholding possession from him under an adverse claim to title. A.J. Roach & Co. v. Turk, 56 Tenn. 708, 715-16 (1872). A conversion does not depend on the manual taking of the thing in question and it is not necessary that it be shown that defendant has applied it to his own use. The test is whether one exercises dominion over it in exclusion of or in defiance of plaintiff's rights. Schwartz v. Hearn, 2 Tenn.Civ.App. 666, 674 (Higgins 1912).

It has been held that where there is a conversion of another's property it is not necessary to show that the one converting the property received the benefit of it, since the one converting the property would be liable to the owner even if the property were destroyed or if he made it possible for another to enjoy the benefits thereof. Ivey v. U.S., 88 F.Supp. 6 (D.C.Tenn. 1950). Perry alleges that Appellees exercised dominion over his property in defiance of his right. Perry also alleges his property was damaged while in the control of Appellees.

With regard to damages for the wrongful detention of his property, we feel it is possible that the trial court misunderstood the facts regarding the detention of Perry's television. In the order granting summary judgment, the trial court noted that Perry filed a

grievance concerning his television and his television was returned to him the same day he filed the grievance. Based upon our reading of the facts in this matter, this interpretation by the trial court oversimplifies the facts presented.

Beginning in mid-October, Perry filed several requests for the return of his television set, and his requests went unanswered. On December 4, 1997, after this lawsuit was filed by Perry, his television was located on a "charity" shelf in the property room of the prison and returned to Perry. It appears that his television was in the possession of another inmate during a portion of the time that it was out of Perry's control.

When the television set was returned to Perry on December 4, 1997, Perry noticed damage to the television and asked that the television be returned to the property room. Perry requested the television be held by the property room until a prison grievance procedure was completed. Perry asserts he did this to avoid any allegations that the damage to the television occurred while the television was in his control. His grievance was concluded with a finding that monetary compensation for property loss is a matter inappropriate to the grievance procedure.

After this disposition of his grievance, Perry made several documented requests for the return of his television and the television was not returned to him. Perry was informed the television would not be returned to him until his lawsuit was completed. On January 26, 1998, Perry filed an amended complaint for damages for the injuries to his property and the conversion and/or wrongful detention of his property. Perry also asserted claims of retaliation and extortion. On January 30, 1998, Perry filed another grievance for the return of his television and it was ultimately returned to him, on February 9, 1998. To say that Perry filed a grievance and his television was returned the same day significantly overlooks other events that transpired.

While state officers and employees are absolutely immune from liability for acts or omissions within the scope of their office or employment, they are not immune from liability

8

for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain. Tenn. Code. Ann. 9-8-307(h). Accordingly, if the acts or omissions of Appellees in detaining, damaging, and exercising dominion over Perry's property were willful, malicious, or criminal, Appellees could be liable for damages for the conversion and/or wrongful detention of Perry's property and for any harm to Perry's property.

Perry alleges that his television was converted and/or detained by prison officials in retaliation for previous lawsuits filed by Perry and used as leverage in an attempt to coerce Perry to drop this lawsuit. Perry contends that his TDOC number was scratched off of his television by Appellees and his television was given to another inmate by Appellees. Perry further alleges incidents in which Appellees informed Perry his television would not be returned to him and instructed Perry to stop filing requests for the return of his television, including one incident where racial slurs were used towards Perry by Appellee Boyd. Perry's claims of extortion and retaliation, while not independently actionable, are relevant to the willful, malicious, or criminal nature of the acts and omissions of Appellees.

For the reasons noted hereinabove, we find that there are genuine issues of material fact which should be determined in the trial court. We hold that the trial court erred in granting summary judgment on the issues of conversion of property, wrongful detention of property, and injury to property.

### IV. Conclusion

_____The judgment of the trial court is hereby affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellees, for which execution may issue if necessary.

_____
HIGHERS, J.

9

CONCUR:

_____
FARMER, J.

_____
LILLARD, J.